UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARKEST D. THOMPSON,

               Petitioner,                   Case Number: 18-10717
                                             Honorable Mark A. Goldsmith

v.

JEFFREY HOWARD,

               Respondent.

_____/

**OPINION & ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING CERTIFICATE OF APPEALABILITY, AND (3) GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

Markest Thompson, a prisoner in the custody of the Michigan Department of Corrections, filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges his 2014 convictions for first-degree murder, assault with intent to murder, and multiple firearm-related crimes. For the reasons explained below, the Court denies the petition. The Court denies a certificate of appealability and grants Petitioner leave to proceed on appeal in forma pauperis.

## I. BACKGROUND

The charges against Petitioner arose from a shooting in Saginaw, Michigan which caused the death of Mitchell Sanford and seriously injured Shayla Nelson. The Michigan Court of Appeals summarized the testimony leading to Petitioner's convictions as follows:

> Defendant's convictions arise out of the August 7, 2012 shooting death of Mitchell Stanford. On that night, defendant called Stanford, with whom defendant admitted to being in the business of selling crack cocaine[1] and

asked him if he had any drugs available. Stanford agreed to meet defendant at Grant Street and asked Shayla Nelson to drive him there. Nelson testified that she had no contact with defendant prior to the events that followed.

While in the car with Nelson, Stanford received a phone call from defendant relaying directions to where Stanford was to meet him. However, when Nelson and Stanford arrived at Grant Street, defendant was nowhere to be found. Instead, defendant asked Stanford to meet him at Parkside Court. Once there, Nelson pulled the car alongside defendant and defendant began talking through the passenger-side window with Stanford. According to Nelson's testimony, defendant asked Stanford, "You said 50, right bro?" and Stanford replied, "Yeah, 50", at which point defendant pulled out a .40 caliber handgun and fired multiple shots at Stanford before firing two shots at Nelson.

Stanford suffered multiple gunshot wounds to his head and died of those wounds. Nelson suffered damage to several internal organs requiring extensive surgery. On August 8, 2012, Nelson gave police a description of defendant and later identified defendant as the shooter from a photo line-up. Defendant went "on the run" until February 23, 2014, when he was arrested in Illinois while traveling by bus to Arizona. When initially questioned, defendant falsely identified himself as Dorian Griffin and produced the birth certificate of Mr. Griffin.[2] Among defendant's personal effects, officers found a loaded 40 caliber handgun[3] and hand-written rap lyrics in first-person prose describing the protagonist's flight from police after shooting an unnamed victim.

_____

[1]Defendant testified that Stanford would generally find the crack cocaine and then sell it to defendant, who would resell it.

[2]Dorian Griffin is the father of the child of defendant's ex-girlfriend, Tamia Brown.

[3]The parties stipulated that the handgun was not the gun used to commit the August 7, 2012 shooting.

*People v. Thompson*, No. 325542, 2016 WL 1683090, at *1 (Mich. Ct. App. Apr. 26, 2016).

Following a jury trial, Petitioner was convicted of first-degree premeditated murder,

Mich. Comp. Laws § 750.316(1)(a), assault with intent to murder, Mich. Comp. Laws §

750.83, possession of a firearm during the commission of a felony ("felony-firearm") (four counts), Mich. Comp. Laws § 750.227b(1), felon in possession of a firearm ("felon in possession"), Mich. Comp. Laws § 750.224f, carrying a firearm with unlawful intent, Mich. Comp. Laws § 750.226, and carrying a concealed weapon, Mich. Comp. Laws § 750.227.  On December 17, 2014, he was sentenced as a fourth habitual offender, Mich. Comp. Laws § 769.12, to life imprisonment without the possibility of parole for first-degree murder; concurrent terms of 75 to 114 years for assault with intent to murder, being a felon in possession, and carrying a firearm with unlawful intent; and five-years' imprisonment for each felony-firearm conviction and the carrying a concealed weapon conviction, to run consecutively to and preceding all other terms.  *Id.*

Petitioner filed an appeal of right in the Michigan Court of Appeals.  He raised these claims through counsel and in a pro per supplemental brief:  (i) evidence that petitioner had a handgun when he was arrested was improperly admitted, (ii) trial counsel was ineffective for failing to object to the admission of evidence that Petitioner was previously incarcerated; (iii) the evidence was insufficient to support a first-degree murder conviction, (iv) counsel was ineffective for failing to investigate and call multiple witnesses, (v) counsel was ineffective for failing to consult an expert on the effects post-traumatic stress may have had on the victim's memory, (vi) counsel was ineffective for failing to object to admission of a tape-recorded phone call, (vii) rap lyrics were improperly admitted, (viii) the prosecutor committed misconduct during closing argument, (ix) the prosecutor improperly vouched for the credibility of a prosecution witness; and (xi) the prosecutor inaccurately stated that Petitioner admitted to the crime.  The Michigan Court of Appeals

3

affirmed Petitioner's convictions.  People v. Thompson, No. 325542, 2016 WL 1683090 (Mich. Ct. App. Apr. 26, 2016).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals.  The Michigan Supreme Court denied leave to appeal. People v. Thompson, 500 Mich. 897 (Mich. Nov. 30, 2016).

Petitioner then filed a habeas corpus petition in this Court raising four claims for relief. (Dkt. 1)  At the same time, he filed a motion to hold the petition in abeyance to allow him to return to state court to exhaust an unexhausted claim.  (Dkt. 3)  The Court granted the motion and stayed the proceedings.  (Dkt. 9)

Petitioner filed a motion for relief from judgment in the trial court raising nine claims.  The trial court denied the motion.  See 11/14/2018 Ord. Denying Mot. For Relief from J. (Dkt. 24-1, PageID.1276-1286.)  Petitioner's applications for leave to appeal the trial court's decision were denied by the Michigan Court of Appeals, People v. Thompson, No. 348962 (Mich. Ct. App. Sept. 23, 2019), and Michigan Supreme Court.  People v. Thompson, 505 Mich. 1081 (May 26, 2020).

Petitioner then returned to this Court.  He filed a motion to excuse his late filing (Dkt. 14), a motion to supplement his habeas corpus petition (Dkt. 15), and a motion to amend the petition (Dkt 16).  The motions were granted, the case reopened, and Respondent was ordered to file an answer.  See 4/15/21 Order (Dkt. 17).

Respondent filed an answer (Dkt. 19) addressing the claims raised in Petitioner's supplemental petition.  But because the Court previously determined that the original and supplemental petitions would be considered together, the Court required Respondent to file

a second answer responding to the claims raised in the original petition (Dkt. 1).  7/22/2024

Order (Dkt. 22).  Respondent has now filed a second answer (Dkt. 23).

Respondent's second answer reorganizes the claims raised in the original,

supplemental, and amended petitions.  The Court finds the Respondent's recitation of the

claims presented encompasses all of Petitioner's claims and provides a more coherent

presentation of the claims.  So the Court adopts the organization presented by Respondent.

Petitioner seeks relief on the following claims:

I.   Admission of evidence denied Mr. Thompson his constitutional due process right to a fair trial under U.S. Const., Am XIV; and Mich. Const. 1963 art 1 & 17.

A. Mr. Thompson was denied his due process right to a fair trial by admission of evidence that he was found with a gun when he was arrested, despite the fact that he was arrested over two years after the shooting the gun was not the one used in the murder; such evidence was merely offered as bad character evidence and was substantially more prejudicial than probative.

B. Mr. Thompson was denied his due process rights to a fair trial by admission of evidence of rap lyrics that were irrelevant and very highly prejudicial and the probative value was outweighed by the danger of an unfair trial.

C. The trial court abused its discretion by allowing inadmissible evidence – booking photograph and other acts testimony – in violation of Defendant's right to due process, equal protection, and fair trial under the 5th, 6th and 14th Amend.

II.  Prosecutorial misconduct in denigrating the defense, shifting the burden of proof, misstating testimony and misrepresenting evidence, knowingly using false testimony and failing to correct it, in violation of defendant's right to due process and a fair trial under 5th, 6th, and 14th Amendments.

A. Mr. Thompson was denied his due process right to a fair trial when the prosecutor committed misconduct when he argued during closing argument that Mr. Thompson lies when it is convenient for him to lie.

B. Mr. Thompson was denied his due process right to a fair trial when the prosecutor vouched for the credibility of prosecution witness Ms. Nelson during closing argument.

C. Mr. Thompson was denied his due prosses right to a fair trial when the prosecutor stated that Mr. Thompson admitted to the crime during closing argument.

D. Mr. Thompson was denied his right to due process when the prosecutor denigrated the defense by telling the jury that defense counsel was misleading them by presenting a defense to rebut the prosecutor's argument.

E. Mr. Thompson was denied his right to due process when the prosecutor knowingly used false testimony.

F. Mr. Thompson was denied his right to due process when the prosecutor misstated and misrepresented the birth certificate evidence to establish the element of premeditation.

G. The prosecutor committed misconduct when the prosecutor informed the jury that petitioner was previously in jail and identified him by the booking photo.

H. Petitioner argues the prosecutor shifted the burden of proof by implying to the jury the petitioner needed witnesses to avoid being convicted.

III. Denial of constitutional right to effective assistance of counsel under U.S. Const., Ams VI, XIV; and Mich. Const. 1963 art 1 & 20.

A. Mr. Thompson was denied his right to effective assistance of counsel by his trial attorney's failure to move to preclude evidence of Mr. Thompson's prior incarceration before trial and failure to preclude evidence of Mr. Thompson's prior incarceration before trial and failure to move for a mistrial after references to him being in jail or having a booking photo.

B. Mr. Thompson was denied his right to effective assistance of counsel by his trial attorney when he failed to call and investigate witnesses Nolan Woods, Delmont Joshua, Roy Atkins, and prosecution witness Lisa Rucker, and important witnesses that could

6

have testified to the friendship that Mr. Stanford and Mr. Thompson had. Mr. Thompson was also denied his right to effective assistance of counsel by his trial attorney when he failed to investigate and consult a psychiatrist as an expert witness to the symptoms of the effects of post-traumatic stress can have on the memory, an illness the victim testified that she was diagnosed with.

C. Mr. Thompson was denied his right to effective assistance of counsel by his trial attorney when counsel failed to object and challenge the edited portion of the jail phone call made by the defendant under Rule of Completeness MRE 106. Trial counsel was ineffective for failing to investigate the contents of the jail phone call.

D. Trial counsel was ineffective for failing to further investigate the origin of the birth certificate.

E. Trial counsel was ineffective for failing to investigate other suspects.

F. Trial counsel was ineffective for failing to object to the prosecutor's comments about defendant stealing the birth certificate, for failing to object to the prosecutor making references to "red herring" in closing argument not in rebuttal and stating that defense counsel was making up their defense to the state's evidence as they go along, and failing to object to the prosecutor's misstatement of the evidence and misleading the jury by arguing facts not in evidence regarding the birth certificate.

G. Trial counsel was ineffective for failing to challenge the identification because the victim only saw the petitioner after the shooting.

IV. The evidence of premeditated, first-degree murder was insufficient. Mr. Thompson's conviction represents a denial of due process of the constitutional magnitude.

V. Admission of evidence obtained in violation of petitioner's right to be free from illegal search and seizure under the Fourth Amendment.

VI. The cumulative effect of evidentiary errors and prosecutorial misconduct deprived defendant of a fair trial in violation of his due process and equal protection under the 5th, 6th, and 14th Amendments.

7

VII. The trial court failed to transcribe the very poor quality jailhouse phone call recording.

VIII. Newly discovered evidence shows petitioner is actually innocent of the offense he is convicted of in violation of his right to due process and fair trial under the 5th, 6th, and 14th Amendments.

## II.  STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes "important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases." Shoop v. Hill, 139 S. Ct 504, 506 (2019).  A federal court may grant habeas corpus relief only if the state court's decision "resulted in a decision that was contrary to, or involved an unreasonable application of," Supreme Court precedent that was "clearly established" at the time of the adjudication.  28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  Williams v. Taylor, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409.  To obtain habeas relief in federal court, a state prisoner must show that the state-court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011)

A state court's factual determinations are presumed correct on federal habeas review. See 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence. Id. For claims that were adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court." Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

## III. STATUTE OF LIMITATIONS AND PROCEDURAL DEFAULT

Respondent asserts a statute of limitations defense with respect to the claims raised in Petitioner's supplemental petition, arguing that the claims do not relate back to the original petition. Respondent also argues that those claims and Petitioner's prosecutorial misconduct claims are procedurally defaulted. AEDPA's limitations period is not jurisdictional and the Court may decline to determine the timeliness of a petition when a petitioner is not entitled to habeas relief. Moss v. Miniard, 62 F.4th 1002, 1010 (6th Cir. 2023), cert. denied, 144 S. Ct. 1004, 218 L. Ed. 2d 21 (2024). Likewise, the Court is not required to address a procedural default issue before deciding against the petitioner on the merits. Overton v. Macauley, 822 F. App'x 341, 345 (6th Cir. 2020) ("Although procedural default often appears as a preliminary question, we may decide the merits first."). Here, rather than conduct a lengthy inquiry into timeliness and procedural default, judicial economy favors proceeding directly to a discussion of the merits of Petitioner's claims.

## IV. DISCUSSION

### A. Evidentiary Claims

Petitioner raises multiple claims challenging several trial court evidentiary rulings. Specifically, he argues that the trial court improperly admitted evidence that he possessed a gun and incriminating rap lyrics at the time of his arrest.  He also claims that the trial court erred in admitting testimony regarding his booking photograph.

Petitioner challenged admission of evidence related to the gun and rap lyrics on direct review.   The Michigan Court of Appeals held that the evidence was properly admitted:

> Defendant points out that the gun he possessed at the time of the arrest was not the gun used during the commission of the shooting of Mitchell Stanford and that the rap lyrics he possessed did not indicate what crime the protagonist was fleeing.  Defendant claims that the evidence was therefore irrelevant to the charges against him, was introduced as improper character evidence, or was otherwise unfairly prejudicial.   We find the trial court properly accepted this evidence as evidence of defendant's consciousness of guilt and dismiss defendant's claims.
>
> Generally, all relevant evidence is admissible.  MRE 401.  However, even when relevant, "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion," MRE 404(a), and "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  MRE 404(b)(1).  Furthermore, otherwise admissible evidence is rendered inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice." MRE 403.   "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury."  People v. Crawford, 458 Mich. 376, 398; 582 NW2d 785 (1998).
>
> Evidence of flight is generally admissible to prove consciousness of guilt. People v. Coleman, 210 Mich.App 1, 4-5; 532 NW2d 885 (1995).  "Such evidence is probative because it may indicate consciousness of guilt, although evidence of flight itself is insufficient to sustain a conviction."  Id. at 4.  "The term 'flight' has been applied to such actions as fleeing the scene of the crime, leaving the jurisdiction, running from the police, resisting arrest, and attempting to escape custody."  Id.

Defendant argues that he was unfairly prejudiced by the admission of the evidence regarding the details of his escape because it involved criminal acts separate from those at issue in the trial.   Defendant argues that the prosecution should not have been allowed to introduce evidence that he had a gun in his possession at the time of his arrest because the admission of evidence of other criminal activity is strictly limited by MRE 404(b). Additionally, defendant argues that the prosecution should not have been allowed to introduce evidence of the rap lyrics because those lyrics do not describe a specific crime but rather contain general expressions of violence in crude terms, references to drugs, and profanity that run the risk of the jury convicting defendant on the basis of his bad character.

We agree that, had the prosecution offered this evidence to prove defendant's bad character, the evidence would be inadmissible under MRE 404. However, "[e]vidence that is admissible for one purpose is not inadmissible because its use for a different purpose is precluded." Id. at 5. When arrested, defendant admitted that he was both fleeing the jurisdiction and running from police.   Thus, the prosecution properly sought to prove defendant's consciousness of guilt through evidence of defendant's flight from the jurisdiction.   In doing so, the prosecution was entitled to offer as evidence the fact of defendant's flight as well as the details regarding such flight.   Id. ("testimony regarding the criminal actions accompanying an escape or attempted escape is admissible because those actions are part of the res gestae of the incident.") Therefore, that this evidence would be inadmissible if offered to prove defendant's conformity with other bad acts or bad character does not prevent the evidence from being accepted as proof of consciousness of guilt unless the evidence is unfairly prejudicial to defendant.

We do not believe this evidence unfairly prejudiced defendant.   The rap lyrics were highly probative of defendant's consciousness of guilt in this case.   At trial, the defendant admitted to writing the following lyrics: (1) "I'm movin' state to state, running house to house," (2) "Losin' my mind ...," (3) "Homicide detectives call they self shaking some trees," (4) "Stay with a gun, wanted for a body or two," (5) "still at large, how long can I run ... before he come back to place that he from," (6) "Take flight when the body stop movin', yeah, I make sure that I do'em, keep twitchin' and I keep shootin.'" These lyrics were found on defendant's person while he was admittedly on the run from police.   The lyrics describe, in first person, a protagonist shooting his victim before fleeing the jurisdiction while carrying a gun for protection.   The rap lyrics therefore closely connected defendant to the murder of Stanford.   There were no apparent inconsistencies between the crimes defendant was charged with committing and the lyrics.   Given this high degree of relevance, the fact that the lyrics are violent, laced with

profanity, and reference drugs is minimally, if at all, prejudicial to defendant. Defendant testified on his own behalf and stated that the lyrics did not relate to the crimes charged and defendant's counsel argued in closing that the content of the lyrics was characteristic of general "gangster rap" and did not amount to a confession. What the jury chose to believe is not a sufficient basis to find that defendant was unfairly prejudiced by this evidence. People v. Jones, 115 Mich.App 543, 553; 321 N.W.2d 723 (1982) ("It is the jury's task to weigh the evidence and decide which testimony to believe"). Accordingly, we find the trial court did not err in admitting the rap lyrics as evidence.

We also conclude that the trial court's admission of evidence concerning the handgun found in defendant's effects at the time of his arrest was not unfairly prejudicial to defendant. The rap lyrics found on defendant describe a person carrying a gun for protection while fleeing from police. That defendant was found with a hand-gun while admittedly fleeing from police is therefore highly relevant to showing defendant's consciousness of guilt for the charged offense. That defendant had no lawful reason to possess such a weapon, though prejudicial to defendant, also provides context for defendant's return to face trial in Michigan. After defendant was arrested in Illinois for unlawfully possessing the weapon, Illinois police located the active homicide warrant for him in the nationwide database. At that point, defendant indicated that he was aware of the warrant and wished to speak with the officers concerning it. Accordingly, we cannot find that the probative value of this evidence was substantially outweighed by the danger of unfair prejudice. MRE 403.

Thompson, 2016 WL 1683090, at *2-4.

The Michigan Court of Appeals' decision was not contrary to, or an unreasonable application of, Supreme Court precedent. First, to the extent that Petitioner raises this claim as a violation of state law, his claim is not cognizable on federal habeas review. Shoemaker v. Jones, 600 F. App'x 979, 984 (6th Cir. 2015). A federal court may grant an application for writ of habeas corpus only on the ground that the petitioner is in custody in violation of the Constitution, laws, or treaties of the United States, and not for perceived errors of state law. See 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

12

Second, Petitioner fails to show a due process violation.  The admission of evidence may violate the Due Process Clause (and thereby provide a basis for habeas relief) where the admission "is so extremely unfair that its admission violates 'fundamental conceptions of justice.'"  Dowling v. United States, 493 U.S. 342, 352 (1990) (quoting United States v. Lovasco, 431 U.S. 783, 790 (1977)).  The Supreme Court "defined the category of infractions that violate fundamental fairness very narrowly."  Estelle, 502 U.S. at 73 (1991).  To violate due process, an evidentiary decision must "offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."  Seymour v. Walker, 224 F.3d 542, 552 (6th Cir. 2000) (citation omitted).

Petitioner has not met this high standard.  First, the rap lyrics were clearly relevant because they concerned shooting a victim, fleeing the jurisdiction, and carrying a gun for protection.  In other words, the lyrics concerned precisely what Petitioner was accused of doing.  See United States v. Stuckey, 253 F. App'x 468, 482 (6th Cir. 2007).  Petitioner fails to identify any clearly established Supreme Court precedent that would preclude admission of this evidence.  See Blackmon v. Booker, 696 F.3d 536, 551 (6th Cir. 2012) (observing that "[t]he Supreme Court has never held (except perhaps within the capital sentencing context) that a state trial court's admission of relevant evidence, no matter how prejudicial, amounted to a violation of due process").

Petitioner also does not show that the admission of evidence that he was carrying a handgun when arrested "violated fundamental conceptions of justice."  Dowling, 493 U.S. at 352.  The Court must defer to the state court's holding that this evidence was admissible under state law.  See People v. McGhee, 268 Mich. App. 600, 613 (2005) (ruling that

Michigan Rule of Evidence 404(b) does not preclude evidence of criminal actions accompanying flight because those actions are probative of the intent to avoid capture). While this evidence may have been prejudicial to Petitioner, it was not unfairly so.

Finally, Petitioner argues that the trial court improperly allowed a police officer to testify that the photograph of Petitioner used in the photographic lineup was a booking photo pulled from jail files. (Dkt. 20-9, PageID.430.) After a bench conference, there was no further mention of the source of the photograph. While references to mugshots and the admission of mugshot photographs may be unfairly prejudicial under some circumstances, such was not the case here. See Murray v. Superintendent, 651 F.2d 451, 454 (6th Cir. 1981). The Michigan Court of Appeals held, in the context of an ineffective assistance of counsel claim, that "the very limited testimony implying defendant's prior incarceration did not prejudice defendant's right to a fair trial in light of the other evidence concerning defendant's past ... including defendant's own testimony ... that defendant regularly sold crack cocaine." Thompson, 2016 WL 1683090 at *6. In addition, Petitioner stipulated that he was previously convicted of a felony. (ECF No. 20-13, PageID.616.) Petitioner fails to show that the reference to the source of the photograph rendered his trial fundamentally unfair.

### B. Prosecutorial Misconduct Claims

Petitioner argues that the prosecutor's misconduct violated his due process rights. Specifically, he maintains that the prosecutor committed misconduct during closing argument by: (i) asserting that Petitioner "lies when it is convenient for him to lie," (ii) arguing that Petitioner admitted to the crimes, (iii) vouching for the credibility of

prosecution witness Nelson, (iv) denigrating the defense by telling the jury that defense counsel was misleading them, (v) misstating and misrepresenting evidence to establish the element of premeditation, (vi) informing the jury that Petitioner was previously incarcerated and referencing Petitioner's booking photograph, and (vii) shifting the burden of proof.   Petitioner also argues that the prosecutor knowingly presented false testimony.

A prosecutor's misconduct violates a criminal defendant's constitutional rights if it "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"   Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).   Prosecutorial misconduct entails much more than conduct that is "undesirable or even universally condemned."   Id. at 181 (internal quotation omitted).   To constitute a due process violation, the conduct must have been "so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process violation."   Washington v. Hofbauer, 228 F.3d 689, 708 (6th Cir. 2000)

The Darden standard "is a very general one, leaving courts 'more leeway ... in reaching outcomes in case-by-case determinations.'"   Parker v. Matthews, 567 U.S. 37, 48 (2012) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004) (alteration in original). "That leeway increases in assessing a state court's ruling under AEDPA," because the court "'cannot set aside a state court's conclusion on a federal prosecutorial-misconduct claim unless a petitioner cites ... other Supreme Court precedent that shows the state court's determination in a particular factual context was unreasonable.'"   Stewart v. Trierweiler, 867 F.3d 633, 638-39 (6th Cir. 2017) (quoting Trimble v. Bobby, 804 F.3d 767, 783 (6th Cir. 2015)).

**1.**

Petitioner first maintains that the prosecutor committed misconduct by arguing to the jury that Petitioner "lies when it's convenient for him to lie."

The Michigan Court of Appeals held that the prosecutor's argument fairly characterized Petitioner's history of false statements:

> Defendant admitted to lying numerous times throughout the trial.   He admitted that he used another person's birth certificate, bank statements, and credit cards to elude police for about 18 months.   He admitted to lying to police about his identity at the time of his arrest, and he admitted to changing parts of his story when confronted by police evidence.   The prosecution did not mischaracterize the evidence nor imply a special knowledge that defendant was testifying untruthfully.   The prosecution merely argued the evidence and the reasonable inferences there from.   Therefore, we find that the prosecution's statement does not constitute prosecutorial misconduct.

Thompson, 2016 WL 1683090 at *10.

It is inappropriate for a prosecutor to make personal attacks on a defendant. See, e.g., United States v. Collins, 78 F.3d 1021, 1040 (6th Cir. 1996).  But prosecutors may highlight inconsistencies or inadequacies in the defense, Bates v. Bell, 402 F.3d 635, 646 (6th Cir. 2005), and point out the lack of evidence supporting a defense theory.  United States v. Forrest, 402 F.3d 678, 686 (6th Cir. 2005).  "A prosecutor should not give his own opinion as to the credibility of witness[,] ... Nevertheless, this does not mean that the prosecution cannot attack the defendant's credibility or even assert that the defendant is lying."  West v. Bell, 550 F.3d 542, 565 (6th Cir. 2008).

In this case, it was not unreasonable for the Michigan Court of Appeals to hold that the prosecutor's argument was a permissible attack on Petitioner's credibility.  Relief is denied on this claim.

**2.**

Petitioner argues that the prosecutor improperly vouched for the credibility of Shayla Nelson by stating during closing argument:

> What motive would Shayla Nelson have to say it was the defendant who shot Mitchell Stanford?  It was the defendant who shot me, because if it's not Mitchell Stanford [sic], then the real killer's still on the loose. Why would she say that? Because she's telling you the truth.

Thompson, 2016 WL 1683090, at *10.

The Michigan Court of Appeals held that the prosecutor's comment was proper because it "did not imply special knowledge in the truth of Nelson's statement but rather argued that Nelson had a motive to tell the truth: to seek justice for her friend, Stanford, as well as herself, and to assure that the person who shot them was not still at large." Thompson, 2016 WL 1683090, at *10.

The state court's decision is not contrary to, or an unreasonable application of, Supreme Court precedent.  It is not improper for a prosecutor to explore a witness's motive for testifying that may bear upon credibility determinations. See United States v. Akins, 237 F. App'x 61, 64 (6th Cir. 2007). The prosecutor did not express a personal belief as to Nelson's credibility; instead, the prosecutor emphasized Nelson's personal motives for testifying and inferred that these motives were consistent with testifying truthfully.   This argument did not deprive Petitioner of a fair trial.

**3.**

With respect to Petitioner's claim that the prosecutor incorrectly argued that Petitioner admitted committing the homicide, the Michigan Court of Appeals denied relief as follows:

> [D]efendant argues that the prosecution committed misconduct when it argued to the jury that defendant was "cornered with his own statements about committing this homicide." Taken in context, the prosecutor stated:
>
>> Well, he's cornered today. Okay? He's cornered with the evidence. He's cornered by the physical evidence. He's cornered with testimony from witnesses and he's cornered with his own statements about committing this homicide. Assault with intent to murder [Nelson], we can cross that one off, guilty.
>
> Contrary to defendant's argument, the prosecution did not imply that defendant had confessed to the crime outside of the presence of the jury. Rather, the prosecution properly argued to the jury that defendant's own statements made at trial and in the rap lyrics found on him at the time of his arrest implicated him in the murder. The prosecution did not mischaracterize the evidence nor imply a special knowledge that defendant was testifying untruthfully and, therefore, we reject defendant's final claim of prosecutorial misconduct.

Thompson, 2016 WL 1683090, at *11.

The Michigan Court of Appeals' decision was not contrary to, or an unreasonable application of, Darden. Taken as a whole, the prosecutor's argument did not imply any special knowledge about Petitioner's guilt or admission of guilt. Instead, the prosecutor argued that the evidence presented implicated Petitioner. Habeas relief is not warranted on this claim.

### 4.

Next, Petitioner argues that the prosecutor committed misconduct by denigrating the defense. For example, the prosecutor argued that defense counsel was misleading the

18

jury with "red herrings" which could "distract [the jury] from the truth." (Dkt. 20-13, PageID.602.)

The trial court issued the last reasoned decision deciding this claim and held the prosecutor's comments were proper. (See Dkt. 24-1, PageID.1281-82.) The state court held that the arguments were not aimed at denigrating the defense or defense counsel. Instead, the prosecutor's arguments were centered on the evidence presented and were reasonable responses to defense counsel's opening and closing statements. (See Dkt. 24-1, PageID.1281-82.)

There is nothing inherently improper about a prosecutor's use of the phrase "red herring" when it is a reasonable response to a defense theory. The Sixth Circuit has found acceptable a prosecutor's argument that "when you don't have a defense, it's like an octopus; you kick up a bunch of dirt and put up a smokescreen and try to slink away in the confusion." Key v. Rapelje, 634 F. App'x 141, 149 (6th Cir. 2015). Similarly, the Sixth Circuit has held the prosecutor's characterization of a defense argument as full of "excuses and red herrings" was not misconduct because it did not denigrate defense counsel and merely "highlighted most damning evidence against [the defendant]." United States v. Burroughs, 465 F. App'x. 530, 535 (6th Cir. 2012).

It was reasonable for the trial court to conclude that the prosecutor's remarks fairly responded to the defense theory. In addition, the trial court instructed the jury that the attorneys' statements and arguments are not evidence. (Dkt. 20-13, PageID.615.) A jury is presumed to have followed a trial court's instructions, see Weeks v. Angelone, 528 U.S. 225, 234 (2000).

The Court cannot conclude that the state court unreasonably viewed the substance or effect of the state prosecutor's comments. Therefore, the state court's determination that the prosecutor's conduct did not deprive Petitioner of a fair trial is not contrary to, nor an unreasonable application of, federal law or the facts.

**5.**

Petitioner maintains that the prosecutor knowingly presented false testimony. He points to Nelson's trial testimony that after she heard the first gunshot she could not hear and did not know how many additional shots were fired. Before trial, Nelson had reported that she heard four or five gunshots. Petitioner also states that Nelson could not accurately remember whether she first saw the gun inside or outside the car.

The trial court held that Petitioner failed to offer any evidence to substantiate his claim of perjured testimony. Instead, his argument was based on mere speculation. (ECF No. 24-1, PageID.2483.) As such, Petitioner failed to present sufficient facts to demonstrate the knowing presentation of false testimony. (Id.)

The trial court's resolution of this claim was reasonable. The "deliberate deception of court and jury by the presentation of testimony known to be perjured" violates a defendant's due process rights. See Mooney v. Holohan, 294 U.S. 103, 112 (1935) (per curiam). To prevail on such a claim, a defendant must show that the prosecution knowingly presented false testimony that materially affected the proceeding. United States v. Lochmondy, 890 F.2d 817, 822 (6th Cir. 1989). But "mere inconsistencies" in the testimony are not enough. Id. A defendant must prove that the testimony was

"indisputably false."  See id. at 822-23. And claims of perjury must also survive a harmless-error analysis.  See Rosencrantz v. Lafler, 568 F.3d 577, 583-84 (6th Cir. 2009).

Just as his argument in state court lacked any substantiating facts, so too does Petitioner's argument here.  Defense counsel cross-examined Nelson regarding her recollection of the shooting.  While her testimony may have been inconsistent at times, it was for the jury to decide whether any inconsistencies implicated Nelson's credibility. There is simply no support in the record for a finding that Nelson's testimony was perjured. Petitioner has not shown that the trial court's rejection of this claim was unreasonable.

**6.**

Petitioner next claims that the prosecutor misrepresented evidence during closing argument when he argued that Thompson stole Dorian Griffin's birth certificate one month before the murder.  Thompson admitted to taking Dorian Griffin's birth certificate from Tamia Brown's home, but maintained that he did so in January 2014, months after the murder.  (ECF No. 20-13, PageID.594.)  Brown testified that the last time Thompson was in her home (where the birth certificate was located) was in July 2012.  The prosecutor's argument that Petitioner stole the birth certificate prior to the murder was a reasonable inference based on Brown's testimony.  See United States v. Betro, ⸺ F.4th ⸺, 2024 WL 3811838, at *7 (6th Cir. Aug. 14, 2024) ("[P]rosecutors must be given leeway to argue reasonable inferences from the evidence.") (quotation omitted).  Additionally, although Brown did not testify that Petitioner "stole" the birth certificate, it was not improper for the prosecutor to infer it was stolen based on the evidence presented.

**7.**

Next, Petitioner argues that the prosecutor committed misconduct by eliciting testimony that the photograph of Petitioner he used for a photo array had been retrieved from jail files. As discussed supra, the jury was aware that defendant was previously convicted of a felony and the reference was isolated. Petitioner fails to show that the reference to the source of the photograph rendered his trial fundamentally unfair. Habeas relief is not warranted on this claim.

**8.**

Finally, Petitioner maintains that the prosecutor improperly shifted the burden of proof by focusing on Petitioner's vague and inconsistent references to "Tina" and "Crystal." He first told police officers in Illinois that Tina and Crystal were present during the shooting and saw someone else fire into the vehicle. He initially denied speaking to Tina after the shooting, but later admitted to talking to Tina by phone a couple of hours after the shooting. He told the Illinois officers that he used someone else's phone to call Crystal and that Crystal just happened to be with Tina at the time. Petitioner did not tell law enforcement officers the last names of Tina or Crystal. The prosecutor maintained that Petitioner's references to Tina and Crystal were evidence of his lack of credibility. The prosecutor did not state or imply that it was Petitioner's duty to produce these witnesses. Instead, the prosecutor highlighted Petitioner's *own* testimony and prior statements to argue that Petitioner's story was implausible. This was not improper burden shifting.

## C. Ineffective Assistance of Counsel

Petitioner argues that defense counsel rendered ineffective assistance in multiple ways. On habeas corpus review, to prevail on an ineffective assistance of counsel claim,

Petitioner must show that the state court's denial of his claim was contrary to, or an unreasonable application of, <u>Strickland v Washington</u>, 466 U.S. 668 (1984). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: a habeas petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. <u>See</u> <u>id.</u> at 687.

The standard for obtaining habeas corpus relief is "'difficult to meet.'" <u>White v. Woodall</u>, 572 U.S. 415, 419 (2014) (quoting <u>Metrish v. Lancaster</u>, 569 U.S. 351, 358 (2013)). In the context of an ineffective assistance of counsel claim under <u>Strickland</u>, the standard is "all the more difficult" because "[t]he standards created by <u>Strickland</u> and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." <u>Harrington</u>, 562 U.S. at 105 (internal citations and quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable"; but whether "there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard." <u>Id.</u>

### 1.

First, Petitioner argues counsel was ineffective for failing to move to preclude evidence of Petitioner's prior incarceration before trial and failing to move for a mistrial when references were made to him being in jail or having a mugshot. The Michigan Court of Appeals denied this claim:

> In this case, after a police officer testified that he retrieved defendant's photograph from prior jail photographs for use in a photo array, defense counsel asked to approach the bench. The trial court, prosecution, and defense counsel then conducted a sidebar before continuing the testimony. Thereafter, the prosecution did not again mention the source of the photograph. It thus appears that defense counsel chose not to object, and rather, to discuss the issue at sidebar, in a strategic effort not to further

23

emphasize the source of the photo to the jury.  Had defense counsel chosen to object in the presence of the jury, the trial court would have presumably instructed the jury that it should not consider defendant's prior incarceration when determining his guilt in this case.  In so doing, defense counsel would have necessarily reemphasized defendant's prior incarceration. Accordingly, we find counsel's decision not to object was sound trial strategy and deny defendant's claim on this ground.

Nor did defense counsel err in failing to move for a mistrial on this basis. "A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." People v. Haywood, 209 Mich.App 217, 228; 530 NW2d 497 (1995) (internal quotation omitted).  Here, the very limited testimony implying defendant's prior incarceration did not prejudice defendant's right to a fair trial in light of the other evidence concerning defendant's past.   The uncontested testimony, including defendant's own testimony, thoroughly established that defendant regularly sold crack cocaine.  The jury knew that defendant had a criminal past, and the brief statement suggesting that defendant had previously been incarcerated, without more, would not have likely changed the jury's perception of defendant.   Accordingly, had defense counsel requested a new trial, the trial court would have been required to deny the motion.   "It is well established that defense counsel is not ineffective for failing to pursue a futile motion," People v. Brown, 279 Mich.App 116, 142, 755 NW2d 664, 683 (2008), and therefore we hold that defendant's counsel was not ineffective for failing to request a new trial.

Thompson, 2016 WL 1683090, at *6.

The state court's decision was not contrary to, or an unreasonable application of, Strickland.  Counsel could have reasonably concluded it would be pointless to object in front of the jury or request a cautionary instruction when the fact of Petitioner's prior record was known to the jury through the stipulated felony.  Additionally, because an attorney is not required to make meritless motions, counsel was not ineffective for failing to move for a mistrial.

**2.**

24

Petitioner maintains counsel was ineffective for failing to present evidence. Specifically, he maintains counsel should have called witnesses to testify about his friendship with Stanford and that counsel should have questioned Nelson's memory by calling an expert to testify that post-traumatic stress disorder can negatively impact memories. The Michigan Court of Appeals found no error because Petitioner "failed to provide any documentary support for his assertions that the proposed witnesses would have testified that he was, in fact, friends with Stanford." Thompson, 2016 WL 1683090 at *7. The state court held that "[a]bsent such support, defendant has failed to meet his burden of establishing a factual predicate for this claim, and he cannot establish that the proposed testimony would have supported his case such that he was deprived of a substantial defense." Id.

The state court's decision was not unreasonable. Petitioner again fails to offer evidence as to what the lay and expert witnesses' testimony would have been and, therefore, cannot explain how these witnesses would have aided in his defense. A habeas petitioner's claim that trial counsel was ineffective for failing to call witnesses cannot be based on speculation. See Keith v. Mitchell, 455 F.3d 662, 672 (6th Cir. 2006).

**3.**

Petitioner argues that counsel failed to object to admission of an edited phone call Petitioner made from jail or, alternatively, to move for admission of the entire recording. He also alleges counsel should have investigated the contents of the jailhouse phone call. The Michigan Court of Appeals held that counsel was not ineffective:

We also deny defendant's claim that counsel was ineffective for failing to object to the admission of an edited recording of a phone call defendant made while incarcerated or failing to move for admission of the entire recording. At trial, the prosecution presented evidence that the number defendant called to get in touch with Stanford belonged to a mobile phone that defendant shared with Tiffany Eckles.  Eckles had previously told investigators that defendant was the last one who had the phone but at trial testified that it was lost or stolen.  Although the subject recording is not part of the record on appeal, the prosecutor's closing argument indicates that the recording was offered as evidence to show that defendant attempted to request that Eckles say that the mobile phone was lost.

Defendant suggests that counsel believed "the recording was barely audible" and that it was "hard to make out what it's saying."  Defendant claims that counsel should have objected to the admission of the recording because "the prosecution can mislead the jury."  However, defendant has failed to provide any connection between the recording and any misleading statement made by the prosecution to the jury.  "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." People v. Payne, 285 Mich.App 181, 195; 774 NW2d 714, 724 (2009).  Accordingly, we find no merit to defendant's argument.

Defendant argues alternatively that counsel should have requested that the whole recording be played pursuant to MRE 106.  Under MRE 106, "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."  Defendant argues that playing the whole recording would have shown that he believed that the police and witnesses were lying in order to have him arrested and convicted of the charged crimes.  However, the record on appeal does not establish that the recording would have made this point.  Even if it would have, if the recording was barely audible the decision not to present it would not have fallen below an objective standard of reasonableness, Trakhtenberg, 493 Mich. at 51, given that defendant testified extensively on the subject at trial.  Because defendant cannot show that the editing of the recording affected the outcome of his trial, we reject this claim.

Thompson, 2016 WL 1683090, at *6-7.

Other than simply stating his claim that counsel should have handled the phone call differently, Petitioner fails to allege any facts to show that counsel's decision was anything other than a reasonable trial strategy.  He also fails to allege any specific ways in which counsel's alleged error prejudiced the defense.  Such conclusory allegations of ineffective assistance of counsel do not state a constitutional claim.  <u>Wogenstahl v. Mitchell</u>, 668 F.3d 307, 343 (6th Cir. 2012).

**4.**

Petitioner claims counsel was ineffective for failing to investigate the origin of the birth certificate.  He maintains that "[i]f counsel had investigated he would have found proof that petitioner obtained the birth certificate after the murder."  (ECF No. 15, PageID.133).  In fact, counsel pointed out numerous times that the birth certificate in Petitioner's possession at the time he was arrested was dated March 25, 2013, well after the murder.  Petitioner fails to specify what else counsel could have done or what information further investigation would have revealed.  A conclusory or speculative argument that counsel should have done more with no supporting evidence or offer of proof is insufficient to warrant habeas relief.  See Wogenstahl, 668 F.3d at 335-36 ("[C]onclusory and perfunctory ... claims of [ineffective assistance of counsel] are insufficient to overcome the presumption of reasonable professional assistance and are insufficient to warrant habeas relief.").

**5.**

Next, Petitioner argues that counsel failed to investigate other suspects identified in Crime Stoppers' tips and failed to present the testimony of Dalance Stephens.  The trial court found Petitioner's assertions insufficient "to establish any concrete deficiency in his counsel's actions."  (Dkt. No. 24-1, PageID.1284.)  First, Petitioner failed to present "sufficient detail to determine whether there was any concrete evidence" to be gleaned from the Crime Stoppers' tips which his counsel could have raised at trial.  (Id.)  Absent this supporting information, Petitioner's claim is speculative and, therefore, insufficient to show counsel was ineffective.

Second, Petitioner presented to the trial court an affidavit of Dalance Stephens executed on October 1, 2018. Stephens claimed to have seen a man named "Bobby" shoot the victims. (Dkt. 15, PageID.42.) The trial court rejected this argument because Petitioner provided "nothing to establish that his counsel had access to any evidence which would have led him to Mr. Stephens upon further investigation." (Id.)

In addition to failing to show that counsel could have discovered Stephens' purported testimony, Petitioner fails to address the years-long gap between the shooting and Stephens' affidavit. Long-delayed affidavits like this which seek to exonerate a habeas petitioner are "treated with a fair degree of skepticism." Herrera v. Collins, 506 U.S. 390, 423 (1993). Indeed, claims "based solely upon affidavits are disfavored because the affiants' statements are obtained without the benefit of cross-examination and an opportunity to make credibility determinations." Id. at 417. Given the deferential standard of review applicable to ineffective assistance of counsel claims, Petitioner fails to rebut the "strong presumption" that counsel's performance fell "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Relief is denied on this claim.

**6.**

Petitioner argues that counsel was ineffective for failing to object to the prosecutor's misconduct. As discussed, Petitioner has failed to show that the prosecutor engaged in misconduct. Counsel, therefore, was not ineffective in failing to object on this basis.

**7.**

Next, Petitioner claims that counsel was ineffective for failing to challenge Nelson's identification of him as the shooter.   He argues the identification should have been challenged because:

> [T]he victim only saw the petitioner after the shooting.   The incident happened in less than a minute and the victim admitted she was texting at the time of the shooting.  She testified to looking up after shots [were] fired. ... The victim did not see the petitioner until a year and a half [later] when she identified him in an in-court identification.   The in court identification was clearly suggestive because petitioner's face could have been one out of other faces she [saw] after the shooting.   The victim's actual description of the shooter was vague, and the description given could have been any other man with a beard that was at the shooting.

(ECF No. 15, PageID.136.)

The Due Process Clause requires suppression of eyewitness identification evidence only "when law enforcement officers use an identification procedure that is both suggestive and unnecessary." Perry v. New Hampshire, 565 U.S. 228, 238-39 (2012) (quoting Manson v. Braithwaite, 432 U.S. 98, 114, (1977)).  A pretrial identification procedure violates due process where: (1) the identification procedure is impermissibly suggestive; and (2) the suggestive procedure gives rise to a very substantial likelihood of misidentification.  Neil v. Biggers, 409 U.S. 188, 197-98.

The trial court denied this claim because Petitioner failed to identify any facts showing the use of improper identification procedures.   (Dkt. 24-1, PageID.1279.) Petitioner also fails to identify any such facts in his habeas petition.   Indeed, although Petitioner frames the argument in terms of an unduly suggestive pretrial identification procedure, he actually challenges whether Nelson's identification was rendered suspect by

30

the circumstances of the crime, *e.g.*, she was looking at her phone when the shots were fired, the stress of the situation impeded her ability to recount details.  These circumstances go to the accuracy of Nelson's identification, not to its admissibility.  Defense counsel properly cross-examined Nelson extensively about her ability to identify Petitioner.  Because Petitioner identifies no impermissibly suggestive pretrial procedure, he fails to show that counsel was ineffective for failing to raise this claim.

### D.  Sufficiency of the Evidence

Petitioner claims that the prosecutor presented insufficient evidence to support the premeditation element of first-degree murder.

On habeas review, the sufficiency of the evidence inquiry involves "two layers of deference": one to the jury verdict, and a second to the Michigan Court of Appeals' decision.  Tanner v. Yukins, 867 F.3d 661, 672 (6th Cir. 2017).  First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Brown v. Konteh, 567 F.3d 191, 205 (6th Cir. 2009) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)) (emphasis in Jackson).  Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable."  Id.

The Michigan Court of Appeals, applying the appropriate standard of review, denied Petitioner's claim:

The prosecution presented sufficient evidence to support defendant's conviction of first-degree, premeditated murder. In proving defendant's guilt under MCL 750.316(1)(a), the prosecution bears the burden to establish the element of premeditation by evidence that there existed some time span between the formation of the initial intent to kill and the ultimate murder long enough that it would afford a reasonable person time to take a "second look" before committing the murder. People v. Gonzalez, 468 Mich. 636, 641; 664 NW2d 159 (2003). In the instant case, while defendant spoke on the phone with Stanford, defendant repeatedly asked Stanford who was with him. Additionally, defendant changed the meeting place while on the phone with Stanford and defendant's attack was not provoked; rather, defendant surprised his victims during the midst of a seemingly peaceful conversation. This testimony allowed the jury to infer that defendant had planned the attack in advance, assessing the particulars of the act he later intended to commit and luring his victims to a location he found more suitable.

Defendant argues that he would not have lured Stanford to the site of the crime had he planned to commit the murder in advance because the sight was open, public, and populated. However, this argument was properly presented at trial and rejected when the jury found defendant guilty of premeditated murder. Nowack, 462 Mich. at 400. As defendant had contacts in the area and may have chosen the location for that reason, we cannot say that the jury's rejection of defense's argument was unreasonable. Though the prosecution used defendant's theft of Dorian Griffin's birth certificate to prove premeditation even though the birth certificate was issued after the murder took place, defense counsel argued this discrepancy to the jury, correcting what appears to have been an inadvertent mistake by the prosecution. Assessing the evidence as a whole, we find sufficient evidence to support a rational jury's finding beyond a reasonable doubt that defendant premeditated the murder and affirm defendant's conviction.

Thompson, 2016 WL 1683090, at *8-9.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The record supports the state court's appraisal of the evidence which, if believed, established the premeditation element of first-degree murder under Michigan law. While the birth certificate found on Petitioner when he was arrested was issued after the murder, it was the prosecution's theory that this birth

certificate was a duplicate obtained by Petitioner in addition to the one stolen from Brown's home.  Petitioner's arguments opposing the state court's holding ask the Court to "reweigh the evidence … or substitute [its] judgment for that of the jury," – a role reserved for the jury, not a federal habeas court.  Brown, 567 F.3d at 205.  Petitioner is not entitled to relief on this claim.

### E.  Fourth Amendment Claim

Petitioner claims that his Fourth Amendment right to be free from unlawful search and seizure was violated when his cell phone records were used to find his location at the time of the crime.  Where a state "has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  Stone v. Powell, 428 U.S. 465, 494 (1976).  "Michigan has a procedural mechanism which presents an adequate opportunity [for a criminal defendant] to raise … Fourth Amendment claims."  Machacek v. Hofbauer, 213 F.3d 947, 952 (6th Cir. 2021).  Petitioner has not shown that presentation of this claim was frustrated by a failure of this mechanism.  The claim is therefore barred from federal habeas review.

### F.  Cumulative Error

Petitioner claims that the cumulative effect of multiple errors asserted in the habeas petition denied him a fair trial.  This claim does not provide a basis for relief because the Sixth Circuit has held that such claims are not cognizable in federal habeas corpus proceedings.  Cartwright v. Phillips, No. 23-5747, 2024 WL 669308, at *5 (6th Cir. Jan. 26, 2024) (citing Hill v. Mitchell, 842 F.3d 910, 948 (6th Cir. 2016)).

### G.  Jail Phone Call

Petitioner argues that he was denied his right to a fair trial and appeal because the recorded jailhouse phone call was not transcribed.  He argues that the transcript would have shown that he did not ask Tiffany Eckles to tell police that the phone was lost.

Federal habeas relief may be granted on a missing transcript only when a petitioner can show prejudice.  Scott v. Elo, 302 F.3d 598, 604 (6th Cir. 2002).  "To show prejudice, a 'petitioner must present something more than gross speculation that the transcripts were requisite to a fair appeal.'"  Thomas v. Winn, No. 20-1424, 2020 WL 6582147, at *5 (6th Cir. Oct. 1, 2020) (quoting Bransford v. Brown, 806 F.2d 83, 86 (6th Cir. 1986)).  The trial court held that Petitioner presented nothing more than "sheer speculation" to support his claim. (Dkt. 24-1, PageID.1284.)  Additionally, even if a transcript of the phone call would have shown that Petitioner did not ask Eckles to say the phone was lost, Petitioner was not prejudiced by the missing transcript.  The phone call evidence was cumulative to other evidence used to show consciousness of guilt, most notably substantial evidence of flight.  Any error did not have a substantial and injurious effect or influence on the jury's verdict or Petitioner's ability to pursue his appeal.

### H.  Actual Innocence

Finally, Petitioner claims that the affidavit of Dalance Stephens, identifying "Bobby" as the shooter shows that he is actually innocent of first-degree murder.  The Supreme Court has not decided whether a freestanding claim of actual innocence is a substantive ground for habeas relief.  McQuiggin v. Perkins, 569 U.S. 383, 392 (2013) (citing Herrera v. Collins, 506 U.S. 390, 404–405 (1993)).  Even assuming an actual

innocence claim can state an independent claim for habeas relief, Petitioner is not entitled to relief.

A showing of actual innocence must be supported with "new reliable evidence," such as "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." Schlup v. Delo, 513 U.S. 298, 324 (1995); see also House v. Bell, 547 U.S. 518, 555 (2006) (explaining that "the threshold for any hypothetical freestanding innocence claim [i]s 'extraordinarily high'" (quoting Herrera, 506 U.S. at 417)).

As discussed supra, Stephens' affidavit suffers from credibility problems, most notably that it was executed over six years after the shooting and no explanation is offered for the delay.  Stephens' affidavit considered in the context of all of the evidence admitted at trial falls far short of establishing Petitioner's actual innocence.

## V.  CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C.  § 2253(c)(2).  The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).

In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that none of the claims in the habeas petition warrant relief.  Therefore, the Court denies a certificate of appealability.

## VI.  ORDER

For the reasons set forth above, the Court denies the petition for writ of habeas corpus and declines to issue a certificate of appealability.

The Court grants Petitioner leave to proceed in forma pauperis on appeal because an appeal could be taken in good faith.  *See* Fed. R. App. P. 24(a).

SO ORDERED.


Dated:  September 26, 2024
     Detroit, Michigan

s/Mark A. Goldsmith
MARK A. GOLDSMITH
United States District Judge